UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RANDY DEWAYNE SANDERS, JR., | ) | |
| Administrator of the Estate of Randy | ) | |
| Dewayne Sanders, Sr., deceased, et al., | ) | Civil Action No. 5: 14-417-DCR |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| DON BOTTOM, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants Don Bottom's and Rick Rowlette's motion to dismiss.  [Record No. 28]  Bottom and Rowlette argue that the plaintiffs' claims for alleged violations of the United States Constitution under 42 U.S.C. § 1983 should be dismissed for failure to state a claim and based of qualified immunity.  Conversely, the plaintiffs argue that they have met their burden at this stage in litigation.  For the reasons that follow, the Court will dismiss the plaintiffs' claims against Bottom for constitutional violations under 42 U.S.C. § 1983 for failure to state a claim.  However, all other claims against Bottom and Rowlette remain pending.

**I.**

Plaintiffs Randy Dewayne Sanders, Jr., administrator of the estate of Randy Dewayne Sanders, Sr.; Kortney Sanders, as guardian of B.R.S. and H.M.J.S., minor daughters of Randy Dewayne Sanders, Sr.; and Rebecca Marie Lindsey, the adult daughter of Randy Dewayne Sanders, Sr., claim that the defendants' violated Randy Dewayne Sanders, Sr.'s

("Sanders") rights guaranteed under the Eighth, Tenth, and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983. The plaintiffs also allege several state law claims.

Sanders was incarcerated at Northpoint Training Center ("Northpoint") during the relevant time period. Bottom served as the Warden of Northpoint and Rowlette acted as the Deputy Warden of Operations at Northpoint during the time referenced in the Complaint. [Record No. 1, ¶¶ 4, 5]  On October 13, 2013, Sanders told a cellmates that he was ill. [Record No. 1, ¶ 11]  He prepared a medical request on October 21, 2013.  [Record No. 1, ¶ 11]  However, Sanders was not seen by a medical professional until October 23, 2013 at 8:51 a.m.  [Record No. 1, ¶ 12]  An appointment was scheduled for Sanders on October 29, 2013, and laboratory tests were ordered for collection on October 24 at 8:00 a.m.  [Record No. 1, ¶ 12]  The items to be tested were never collected.  [Record No. 1, ¶ 12]

The plaintiffs contend that, between October 21, 2013, and October 24, 2013, Sanders' condition seriously deteriorated.  [Record No. 1, ¶ 13]  Fellow inmates and correctional staff allegedly requested medical attention on Sanders' behalf, but those requests were denied.  [Record No. 1, ¶ 13]  Rowlette "personally visited Mr. Sanders on one occasion on October 24, and promised to get him the medical care he needed, but that did not happen."  [Record No. 1, ¶ 13]  By the evening of October 24, Sanders "could not get in or out of bed, was no longer ambulatory, and was essentially immobile."  [Record No. 1, ¶ 13]  He was taken to the medical department in a wheelchair that evening and seen by a licensed practical nurse, who released him back to the dormitory.  [Record No. 1, ¶ 14]

The next morning, Sanders' condition had worsened further.  [Record No. 1, ¶ 15]  Sanders was transported to Ephraim McDowell Regional Medical Center at 7:00 a.m. the

next morning, October 25.  [Record No. 1, ¶ 15]  One of the treating physicians noted that, "[i]t looks like this patient has been sick for some days, although we couldn't get any history from the patient.  We only got minimal history via phone from the [nurse practitioner] at the prison facility."  [Record No. 1, ¶ 16]  Sanders was transferred to the University of Kentucky Medical Center on October 26 and died the next morning.  [Record No. 1, ¶ 17]  The coroner listed the cause of death as "multiorgan dysfunction syndrome due to acid ketoacidosis with multiple metabolic abnormalities and cryptogenic micronodular cirrhosis."  [Record No. 1, ¶ 17]

## II.

Bottom and Rowlette submitted affidavits in support of their motion to dismiss. However, Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting a motion to a summary judgment motion.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The affidavits are not referred to in the Complaint or central to the plaintiffs' claims.

It is within the Court's discretion to consider materials beyond the pleadings, such as the defendants' affidavits, and consequently convert the motion to a motion for summary judgment under Fed. R. Civ. P. 56.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 561–62 (6th Cir. 2008); *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (citation omitted)

-3-

("It is well established that a [d]istrict [c]ourt has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."). The obligation to convert to a summary judgment motion is mandatory if matters outside the pleadings are not excluded by the Court. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) (applying Rule 12(d) to a Rule 12(c) motion); *see Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487–88 (6th Cir. 2009).

The defendants do not advocate for conversion to summary judgment or acknowledge that possibility. Instead, they continue to rely on the standard under Rule 12(b)(6). [Record No. 35]; *see Wallace Sales & Consulting, LLC v. Tuopo North Am., Ltd.*, No. 2:15-cv-10748, 2015 WL 4509349, at *2 (E.D.Mich. July 24, 2015). Generally, before converting a motion to dismiss to one for summary judgment *sua sponte*, the Court must "afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond." *Tackett*, 561 F.3d at 487 (citing *Yahson v. Gregory*, 737 F.3d 547, 552 (6th Cir. 1984)).

The plaintiffs acknowledge that conversion to summary judgment is possible and have submitted additional evidence in support of their claims with their Response. [Record No. 34, pp. 6–7] Thus, the plaintiffs would not be surprised if the motion were converted to one for summary judgment. However, the plaintiffs also note—correctly—that they did not have the opportunity to conduct significant discovery to develop their claims before their response to the motion to dismiss was due. The plaintiffs requested additional time to take

discovery before adjudication of the motion.[1] *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231–32 (6th Cir. 1994) ("[G]rant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery.").

Under the circumstances, the Court declines to convert the defendants' motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56. *Gudenas v. Cervenik*, No. 1:09CV2169, 2010 WL 987699, at *3 (N.D. Ohio Feb. 22, 2010) (citations omitted) ("Where the court does not rely on such materials, or considers them irrelevant to the merits of the motion, the court does not err in simply considering the motion as a motion to dismiss."). Given the stage of discovery at the time the motion was filed, the plaintiffs were not "given a reasonable opportunity to present all the material that [wa]s pertinent to the motion." Fed. R. Civ. P. 12(d). Accordingly, evidence beyond the pleadings will not be considered by the Court. *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *2 (W.D. Mich. March 25, 2011) (citation omitted) ("A district court's decision to exclude such materials should be explicit.").

### III.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

---

[1]     At this time, discovery is complete, but neither party has moved to supplement or amend their filings relating to the motion to dismiss.

Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

## IV.

Bottom and Rowlette are only named in their individual capacities. The Complaint alleges that these defendants were responsible "for providing care to Mr. Sanders for his serious medical needs" and "for training and supervising [their] subordinates, including but not limited to Defendants Rowlette, CorrectCare[-Integrated Health, Inc.], [Shelli Conyers] Votaw, [Tammy] Wilson and [Lee Ann] Watson, to diligently attend to those same duties and responsibilities." [Record No. 1, ¶¶ 4, 5] The plaintiffs allege that these defendants "knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct" that caused Sanders' harm. [Record No. 1, ¶ 9]; *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("[A] § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."). They also allege that Sanders treatment was "not unusual, but was part of a continuing policy, pattern, custom and/or practice of [the d]efendants of willfully and deliberately ignoring the medical needs of inmates of NTC." [Record No. 1, ¶ 21]

### A. Bottom's Individual Liability

Where a supervisor is also a policymaker, it may be easy to "improperly conflate[] a § 1983 claim of individual supervisor liability with one of municipal liability" for claims of

failure to adequately train employees. *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008); *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (noting that official capacity and individual capacity failure to train claims turn on two different legal principles.). With respect to a failure to train claim, "[s]upervisory officials are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)).

Although the plaintiffs have recited the appropriate legal standard for holding Bottom liable for a violation of Sanders' Eighth Amendment rights through § 1983, the Complaint lacks any factual allegations establishing that Bottom "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of offending officers or otherwise had any direct involvement with the alleged constitutional violations. *Heyerman*, 680 F.3d at 647. In other words, the plaintiffs have correctly recited the elements of a claim for a constitutional violation against Bottom in his individual capacity, but those elements are not substantiated by any of the factual allegations in the Complaint.

Even construing the facts alleged in the Complaint and making all inferences in favor of the plaintiffs, none of the allegations suggest "a causal connection between [Bottom's] acts and omissions and the alleged constitutional injuries." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 790 (6th Cir. 2012) (affirming denial of qualified immunity for supervisory failure to train claim). The Complaint does not allege any facts that would allow

-7-

a factfinder to conclude that he directly participated in, approved, or knowingly acquiesced to the alleged unconstitutional conduct.  Thus, the Complaint does not state a claim against Bottom for a constitutional violation under 28 U.S.C. § 1983 and this claim against Bottom will be dismissed.[2]

### B.  Rowlette's Alleged Individual Liability

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This claim for denial of medical care under the Eighth Amendment has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   To satisfy the objective component, the plaintiff must plead facts that, if true, demonstrate the existence of a "sufficiently serious" medical need.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Farmer*, 511 U.S. at 834.  "The subjective element requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'"  *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).  The plaintiff must demonstrate that the defendants were deliberately indifferent to the plaintiff's serious medical needs.  "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertences, or good faith error."  *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"It is well-settled that lack of proper medical treatment can constitute an Eighth Amendment violation" and "[u]pper-level prison officials may, under certain circumstances,

---

[2]     Bottom only moved for dismissal of the plaintiffs' § 1983 claims.  [*See* Record No. 28.] To the extent that the plaintiffs' state law claims were made against Bottom, they remain pending.  [Record No. 1]

be held liable for deliberate indifference to the health and safety of inmates."  *Grose v. Caruso*, 284 F. App'x 279, 284 (6th Cir. 2008) (citation omitted).  "Prison officials' deliberate indifference violates these rights 'when the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care" for a serious medical need. *Blackmore*, 390 F.3d at 895 (quoting *Estelle*, 429 U.S. at 104).

As noted above, "[s]upervisory officials are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Heyerman*, 680 F.3d at 647 (quoting *Hays*, 668 F.2d at 872).

The Complaint alleges sufficient facts which, if true, establish a claim for an Eighth Amendment violation against Rowlette.  Rowlette allegedly had personal interaction with Sanders and recognized that Sanders required medical treatment.  *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").  The plaintiffs allege that Rowlette spoke with Sanders on October 24, after Sanders' condition had allegedly deteriorated significantly.  Although the timeline is not clear, the Complaint alleges that Sanders' condition had deteriorated at that point and, at least within a few hours, Sanders could no longer ambulate and required a wheelchair.  These allegations, taken in a light most favorable to the plaintiffs at this stage, are sufficient to demonstrate the existence of a sufficiently serious need for medical care.  Although Rowlette "promised to get [Sanders] the medical care he needed,"

Rowlette failed to do so.  [Record No. 1, ¶¶ 13, 14]  This alleged failure to obtain medical care, after it was recognized as necessary is sufficient to allege deliberate indifference at this stage.  Additionally, the Complaint sufficiently alleges that Rowlette "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers" to allow the claim to go forward.  *See Phillips*, 534 F.3d at 543.  The Complaint sets out sufficient factual allegations supporting a claim against Rowlette for a violation of Sanders' constitutional rights.

Rowlette also asserts that he is entitled to qualified immunity.  At this stage, however, the plaintiffs have alleged sufficient facts for the claim to go forward against Rowlette.  *Grose*, 284 F. App'x at 283 (citations omitted) ("Where, as here, the standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may be granted, dismissal of [defendants] on the basis of qualified immunity is premature.").  To survive a motion to dismiss based on qualified immunity grounds, the plaintiffs must allege "facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right."  *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).  "Unless the plaintiff[s'] allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citations omitted).

The Complaint sufficiently states a claim against Rowlette for violation of Sanders' constitutional rights, as more fully described above.  *See Johnson*, 790 F.3d at 653.  Further, an inmate's constitutional right to adequate medical attention is well-established in Sixth

-10-

Circuit jurisprudence.  *Pryor v. Dearborn Police Dep't*, 452 F. Supp. 2d 714, 722 (E.D. Mich. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005)) ("As early as 1972, this court stated that 'where the circumstances are clearly sufficient to indicate the need of medical attention . . . the denial of such aid constitutes the deprivation of constitutional due process.").   Thus, Rowlette's motion to dismiss will be denied.

**V.**

Based on the foregoing analysis, it is hereby

**ORDERED** that Defendant Don Bottom and Rick Rowlette's motion to dismiss [Record No. 28] is **GRANTED**, in part, and **DENIED**, in part, for the reasons set forth above.

This 24th day of February, 2015.



Signed By:

*Danny C. Reeves*   DCR

United States District Judge

-11-